## MONNETT v PRODUCERS CO-OPERATIVE COMMISSION ASSN

Ohio Appeals, 2nd Dist, Franklin C:

No 2481. Decided March 1, 1935

Monnett, Hays & Fickell, Columbus, for plaintiff in error.

Wilson & Rector, Columbus, for defendant in error.

## OPINION

By HORNBECK, J.

Although we may not, within the proper confines of this opinion, specifically discuss every error assigned, we have considered all of them. As far as practicable we take up the errors in the order in which they appear in the brief of plaintiff.

Roy Pavey was called by the plaintiff for cross-examination under the statute. It appeared that Mr. Pavey was the manager of the defendant association, selected by the Board of Directors; that the Board prescribed his duties, which were "to run the business in an orderly manner;" that he had no superior outside of the Board of Directors; that he had sole charge of the business in the yard where the sales take place.

The court refused to permit the witness to testify, holding that he was not an officer of the corporation. To this action objection was made and exception noted. This ruling of the trial court is assigned as error. One paragraph of the brief of counsel is devoted to the question with no citation of authorities. The proposition is not touched in the brief of counsel for defendant. The question presented is substantial. We have given it consideration,

and have undertaken to examine some authorities.

The statute relating to the right to call an adverse party for cross-examination, §11497, GC, provides in part:

"If the party be a corporation, any or all the officers thereof may be so examined at the instance of the adverse party." (Emphasis ours.)

The question, then, is: Does the record disclose that Mr. Pavey was an officer of the defendant corporation?

Sec 8623-12 GC, providing for a code of regulation for a corporation, authorizes the corporation to adopt a code of regulations for its government, * * * which may include provisions in respect to: * * * The number, titles, tenure of office, qualifications, compensation and duties of officers * * *."

Sec 8623-62, GC, provides in part:
"Every corporation shall have a president, a secretary and a treasurer, and may also have, if the regulations so provide, or, in the absence of any restrictions in the regulations, the board of directors so determine, a chairman of the board of directors, one or more vice-presidents, assistant secretaries and assistant treasurers and such other officers as may be deemd necessary, all of whom shall be chosen by the board of directors unless the regulations otherwise provide, and who shall respectively have such duties and authority as may be prescribed by the regulations and such, not inconsistent with the regulations, as may be prescribed by the board of directors."

In the light of these sections we are of opinion that the record falls short of the requisite proof that Mr. Pavey as manager was an officer of the corporation. He did not hold any position which by the statute was declared to be an office of the corporation, nor does it appear that the directors determined that the manager should be an officer of the corporation.

Objection is made to the action of the trial court at page 7 in admonishing counsel for defendant, but no exception is noted to the ruling of the court.

Mr. Pavey testified that he was experienced in feeding lambs; that he had for several winters fed some seven to nine hundred; that he had observed lambs infected with fever and pneumonia. This question was put and answered without objection or exception:

"Q. Mr. Pavey, describe the lambs on the Monday they were purchased by the plaintiff.

A. Mr. Monnett purchased a drove of fine wool lambs—Marinos, I would say they were—good, thrifty, healthy set of lambs, in my judgment."

Thereafter a number of questions were put to the witness to elicit his opinion as to the effect on the lambs if they were hauled all night in an open truck in a drenching rain—whether or not "a heavy cold in a lamb would go into pneumonia." The witness was permitted to say that he could recognize pneumonia in sheep. He was also permitted to answer the question 'Does a lamb suffering from a heavy cold develop pneumonia?" Without objection or exception he was permitted to answer this question:

"Q. What symptoms does this heavy cold develop?

"A. Well, the first noticeable symptom is that the lamb will not eat and they have a very heavy discharge at the nostrils.

"Q. Do they have fever?

"A. Yes."

A careful examination of the testimony of Mr. Pavey is convincing that he gave no answers to questions where objections were made and exceptions noted, which would come within the field of expert testimony. He was permitted to answer no question to which objection was made which was even on the border line. A number of questions which, if answered, would have raised the legal propositions as to the qualifications of the witness, either were withdrawn or were not answered in the controversy among counsel, incident to the rulings.

On the cross-examination the witness was very carefully interrogated upon the theory that he had answered certain questions which might be considered in the field of expert testimony and thereby set forth the basis of any answers which he might have made on direct examination, had the answers been forthcoming. We have no doubt that counsel for plaintiff is of opinion that certain answers were permitted to be made over objections and exceptions, which clearly raise the question which he urges in his brief, but a more careful reading will support the statements which we have heretofore made respecting the state of the record.

Error is assigned upon a question which the brief of plaintiff asserts was propounded by Mr. Rector on cross-examination and answer thereto as follows:

"Q. Does a lamb when affected with fever run a temperature?

"A. I would **imagine** they would."

Inspection of the record discloses that this cross-examination was not conducted by Mr. Rector but by counsel for the plaintiff.

Dwight Teegardin, an employee of defendant association, who was in charge of the lambs for said company and who had shown them to the plaintiff, testified. He said that he had been dealing in and associating with the handling of live stock for many years.

This question was put and answered over the objection and exception of counsel for plaintiff:

"Q. What condition were they in with regard to their health?

"A. Why, as far as one could tell the lambs were perfectly all right."

Thereafter, on cross-examination the witness said that he was not a veterinarian; would not be able to tell whether or not a lamb was diseased, outside of its general appearance, and that unless the sickness of the lamb was evident he would not be able to detect it. He also was required at considerable length to describe the condition and state of the lambs which were later sold to the plaintiff.

The question is thus presented whether or not on this record the answer of Mr. Teegardin was within the exclusive field of expert testimony and should not have been admitted.

In Grayson et v Lynch et, 16 Sup. Ct. Rep. 1064, which was an action instituted to recover damages to a herd of cattle by reason of disease, known as "Texas cattle fever," claimed to have been communicated to them by certain cattle owned by the defendants, lay witnesses were permitted to say that the disease with which plaintiff's cattle became affected was ordinarily called "Texas fever." The court held that in connection with the statements of the symptoms they observed the conclusion that the cattle were afflicted with "Texas fever" was a matter of common observation.

In Van House v Canadian Northern Ry. Co. et (Minn.) 192 NW, 493, it was held that a lay witness who had seen plaintiff almost daily for four years could testify that her health was good before she was injured. A number of cases were cited to support the ruling of the trial court. This opinion is in line with rulings in similar situations in our state courts. **Village of Shelby v Claggett, 46 Oh St 549.** See also R.C L., 606.

In the instant case we believe that there was no error in permitting the witness who was experienced with sheep and knew their habits and tendencies to say that in his judgment, "insofar as he could observe," they were healthy sheep. The observation which he made to the effect that the sheep were healthy could not, in our judgment, be objectionable, especially in view of the fact that the jury, when his testimony was concluded, had the benefit of the facts upon which he predicated his observation.

It occurs to us that the scope of such testimony should be wider respecting the health of animals than the health of man because medical services for animals is not so commonly employed as for humans. Certainly if the witness enters the field of purely expert testimony, such as diagnosing disease, then the rule should be more strictly observed.

Objection is made to the ruling of the trial court in refusing to permit question propounded by plaintiff's counsel, found on page 76, to be answered. No exception was noted to the ruling of the court.

Error is also claimed in the admission of testimony of Mr. Pavey, who was recalled and permitted to explain the conditions under which at times diseased animals were sold to slaughter houses. This line of testimony was purely within the discretion of the court and could not have affected materially the action of the jury upon the ultimate questions for determination.

Certain specific errors are asserted, directed to the charge of the court. Plaintiff's counsel, before the general charge but not at the conclusion of the testimony, tendered two specific instructions, which the court did not give at that time, indicating that insofar as he considered them sound law he would incorporate them in the general charge. No exceptions were noted to the failure of the trial court to give the special instruction in the form as tendered.

It is urged that the trial court erred in stating to the jury:

"The defendant for its answer admits its corporate capacity and for further answer denies each and every allegation contained in the petition, which is not admitted in this answer to be true."

That admission of the payment of $1.00

by the check of the association was by this language overlooked.

We are unable to say that this could in any wise be prejudicial in effect, because the check for $1.60 was testified by plaintiff as having been given by the defendant association and the receipt introduced as an exhibit. The jury could not have been misled by the inadvertence.

Objection is made to the court stating the language of the answer in terms as related to the claim that the defendant sold the lambs as the agent of an undisclosed principal. All the trial court did was to read from the answer. If it were not a proper form of pleading it should have been disposed of by motion to strike or in some other form before the cause went to the jury for determination.

Objection is made to the definition of preponderance of evidence as used in the general charge. The language employed is unusual but we do not believe it erroneous.

It is urged that the court erred in saying that implied warranty would not pertain as against disease, which an examination ought to have revealed and in several places in the charge stating that if the diseased condition of the lambs was observed or could have been observed by the plaintiff upon inspection he could not recover upon an implied warranty.

We are satisfied that it would have been more in accord with the testimony to have omitted the references to that which the plaintiff could have discovered upon examination, touching the state of health of the lambs. There could be no claim on this record that the plaintiff could have detected any disease in the lambs, even though it was present in an incipient stage, as testified by the veterinarian which the plaintiff employed. But simple error may not constitute prejudicial error and we are satisfied that such is the state of this record. The jury could not, in the exercise of common sense, have found that the plaintiff should have known upon his inspection of the lambs of any incipient disease and it was not claimed they suffered from a patent or obvious disease.

Upon the pleadings and the record there were several issues of fact:

(1) The principal issue,—were the lambs at the time that the plaintiff purchased them affected with a disease from which some of them died? (2) Did the plaintiff expressly or impliedly make known to the defendant's agent that he was purchasing the lambs for feeding purposes and rely upon the seller's skill and judgment? (3) Was the truckman who transported the lambs to the farm of plaintiff the agent of plaintiff or the agent of the association? (4) Did the transporting of the lambs at the time and in the manner in which they were hauled aggravate or accelerate the progress of the disease and contribute to the death of the lambs which died and the sickness of the others? Issues Nos. 3 and 4 are but collateral to a determination of issue No. 1.

Considerable space is devoted in the brief of plaintiff to the proposition that the answer that the defendant sold the lambs as the agent for an undisclosed principal could not change the right of the plaintiff to proceed against the association with which he dealt. This claim of the right of the plaintiff may be tenable. 1 O. Jur., 857-865, citing **Davis v Harness, 38 Oh St, 397**, but is not determinative because the charge did not dwell upon this part of the case.

It is also urged that the court in the general charge failed to place the burden of proof on the defendant as to the waiver of the implied warranty of fitness of the lambs. Waiver is always an affirmative defense but was not plead, instead the defendant claimed an express agreement to the effect that there was to be no warranty on the lambs sold.

Giving to the evidence all the effect to which it could possibly be entitled, we do not believe that it establishes an **express** agreement that there was to be no warranty as to the fitness of the lambs.

Though the sign contained the statement:

"Producers Cooperative Commission Association sells livestock only on commission and as agent for the owner. There is no warranty or guarantee of any kind expressed or implied as to health, safety, condition or otherwise of any stock sold by it;"

though the auctioneer may have at the beginning of the sale made a statement to bidders then present, substantially to the same effect as carried on the sign, and though the invoice which was given by the defendant to the plaintiff at the time that he paid for the lambs may also have carried language similar to that upon the sign, and though plaintiff had the opportunity to know all of these things, even then the record falls short of proving an **express** agreement that there should be no warranty. 9 **O. Jur., 241.**

The statute. §8451, GC, provides:

"When any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, * * *."

If the defendant was pleading the terms of this statute it would be upon the theory that independent thereof a right, duty or liability would arise against the defendant under the contract. This pleading would be in the nature of an affirmative defense and the burden would be upon the defendant because it would not come into the case until the facts under which an implied warranty would arise had been established. But the defendant denied any implied warranty and the court properly submitted the conditions under which the jury could find that no implied warranty arose.. It was in this connection that the course of conduct of plaintiff was brought into the case.

The court required the jury to find that the plaintiff had actual knowledge of the statement or statements of defendant touching the notice that no stock sold was warranted.

We find no prejudicial error in the charge of the court. It was clearly correct on the main issue, namely: (1) Were the lambs diseased at the time that the plaintiff purchased them? The two-issue rule has application. The jury may properly, under the evidence, have held against the plaintiff on this main issue. We can not say whether or not this was the controlling issue but it may have been. In this situation, there being no special verdict or finding by which we can determine the finding of the jury on the specific issues, inasmuch as the verdict can be supported on the finding of the issue which was properly presented, we could not disturb it, though error intervened as to one of the other issues.

We fully appreciate the attitude of the plaintiff in this case in prosecuting error from the former judgments upon the facts as he sees them, though the amount involved is small.

Upon the testimony of the only expert witness, namely, the veterinarian, if correct, the sheep at the time of purchase, were suffering in an incipient form from the disease with which 50% of the flock were afflicted and many died. If we had been the triers of the facts we may have given more we'ght and consideration to the testimony of the doctor, who drew his conclusions and made his diagnosis after close observation of the lambs and upon post mortems on some of them. We can not, however, say that the jury exceeded its prerogative if it found that the lambs were healthy when sold and that the cause of their death was something which happened after they left the yards of defendant association. If this be true, plaintiff could not recover because it was essential to his case that it be established that the lambs were diseased when sold.

In view of our opinion as to the determinative factors in the case we do not deem it necessary to consider and discuss many of the other legal propositions which are carefully and well presented in the briefs.

The judgment will be affirmed.

KUNKLE, PJ, and BARNES, J, concur.